UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SEASHORE CHARTER SCHOOLS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-345 |
| | § | |
| E.B. BNF G.B., | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING PRELIMINARY INJUNCTION

Pending before the Court is "Plaintiff's Application for Extension of Amended TRO or in the Alternative Plaintiff's Application for Temporary Injunction Hearing" (D.E. 4). The Court reviewed the record, including the Application and Memorandum (D.E. 4, 7), the Response and Memorandum (D.E. 8, 8-6), and the Special Education Hearing Officer's rulings (D.E. 7-1, 7-4, 8-1). On August 29, 2014, the Court heard evidence and arguments and, at the conclusion of the hearing, ruled in favor of Plaintiff, Seashore Charter Schools (Seashore), GRANTING the Application and ordering that Defendant be restrained from attending school at Seashore.

The Court issues the following findings of fact and conclusions of law in support of its ORDER, as follows:

    1.    Seashore Charter Schools, Plaintiff in this cause, filed a Verified Application for Injunctive Relief, including a request for a temporary restraining order in County Court at Law No. 3 in Nueces County on August 15, 2014. D.E.

1-1. The state court issued a temporary restraining order and set the matter for hearing on a state temporary injunction for August 28, 2014.  D.E. 4-1.

2. On August 20, 2014, the Defendants removed the matter to this Court.  D.E. 1.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that it presents a federal question under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415, *et seq*.

4. To the extent applicable, Seashore has exhausted all available administrative remedies.  Based on the facts and circumstances of this matter, any further attempts to exhaust remedies would be futile.

5. To be entitled to a preliminary injunction, the applicant must show (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) a substantial injury outweighs the threatened harm to the party whom it seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.  *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009). Seashore has met each of these requirements.

6. The parties are currently engaged in an administrative special education due process hearing styled *E.B. v. Seashore Charter Schools*, Docket No. 260-SE-0613.  The "stay-put" provision of IDEA states that "during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process  hearing under § 300.507, unless the

State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement." 34 C.F.R. § 300.518(a).

7. In *White v. Ascension Parish School Board*, 343 F.3d 373, 379 (5th Cir. 2003), the Fifth Circuit held that "an educational placement" as used in the IDEA means educational program—not the particular institution where the program is implemented. "Placement" does not mean a particular school, but means a setting such as regular classes, special education classes, special schools, home instruction, or hospital or institution-based instruction.

8. E.B. is a 15-year-old male student who has been diagnosed with severe Autism, communication and cognitive delays, and who has demonstrated unpredictable behavioral issues. During his time at Seashore, despite always being accompanied by a teacher or an aide, he has assaulted at least one student, that student's parent, and his own teacher or aide. He has bit, leaving substantial teeth marks, scratched, grabbed, hit, and has pulled out a chunk of hair. He has also engaged in self-injury. Seashore has hired a behavioral specialist to try to work with E.B. on his violent tendencies.

9. E.B. has experienced substantial growth with puberty and has become increasingly difficult to control among a student population that is younger and smaller than he.

10. During the last school year, the teacher who had been working as the special education teacher for Seashore resigned from that position. After Seashore

could not find a suitable replacement teacher, a behavioral specialist who had worked with E.B. and has special education credentials rearranged her private clinic practice to finish out the school year with E.B. That teacher is no longer available to Seashore.

11.     The evidence is undisputed that Seashore engaged in reasonable efforts to secure a new special education teacher to work with E.B. Seashore has been unable to find such a teacher.

12.     Without an appropriate teacher, homebound education is not a practical alternative. Furthermore, the parties agree that homebound education would be a step backward for E.B.'s education and development. The detrimental impact of homebound education was described as likely to cause regression on issues of both aggression and social gains E.B. has made in past years.

13.     It is undisputed that Flour Bluff High School (FBHS) is the public school to which E.B. is assigned based upon his residence.

14.     Seashore demonstrated that FBHS has an equivalent self-contained classroom for students with similar educational challenges as E.B. FBHS is ready, willing, and able to comply with all aspects of E.B.'s Individual Educational Plan (IEP) and Behavioral Intervention Plan (BIP). FBHS has the facilities and staff to fulfill E.B.'s particular needs, both with respect to his Autism and his behavioral issues. FBHS also offers age-appropriate fellow students and a program to eventually transition out of the school atmosphere. Included are extra-curricular

opportunities not available at Seashore, such as Special Olympics and a number of sports.

15. While E.B.'s mother criticized the FBHS facility and program, she admitted that she had not taken advantage of opportunities that FBHS provided to visit the facility and observe the program. Neither was she familiar with the comparative facilities at Seashore, which had changed over the last year. Furthermore, her complaints regarding E.B.'s potential exposure to crowds and noise were not credible, given Seashore's witnesses explaining E.B.'s equivalent participation in physical education classes and lunch in the cafeteria or library at Seashore.

16. The evidence demonstrates a substantial likelihood that Plaintiff will prevail on the merits.

17. Additionally Plaintiff will suffer irreparable injury if an injunction is not granted. Plaintiff is a charter school that serves students from kindergarten to eighth grade. Defendant is a young man who will turn 16 next month and has already been retained one year at Seashore. Due to Defendant's behavioral challenges and the younger ages of the students at Seashore, Defendant poses a substantial risk of harm to the other students and staff, with or without the staff with credentials necessary to address E.B.'s issues.

18. The evidence demonstrates that the substantial injury to be suffered by Seashore outweighs the threatened harm to the Defendant. E.B. will only benefit from an age appropriate placement at the Flour Bluff High School. It is the

least restrictive environment that will fully provide him with the services outlined in his current IEP with age appropriate peers. Finally, the granting of this preliminary injunction will not disserve the public interest since the appropriate placement of a student in a setting required by law only fosters the public interest, which inures to the benefit of the other students, staff members, the community in general, and, most importantly, E.B.

19. After reviewing the evidence, case law, the administrative hearing officer's orders, and the arguments of counsel, the Court has determined that a preliminary injunction should issue and that the stay-put placement for E.B. is at FBHS, in the self-contained setting, which is age appropriate.

The Court ORDERS that E.B. is not to attend Seashore. His stay-put placement is at FBHS until October 8, 2014 or until the administrative hearing officer renders a decision. Defendant E.B. shall attend FBHS, in a self-contained setting, under his current educational program until further action is taken by this Court or until the appropriate resolution of the administrative proceedings.

On August 15, 2014, the state district clerk issued a cash bond certification on behalf of the Plaintiff in the amount of FIVE HUNDRED DOLLARS ($500.00). This bond shall remain in effect during the pendency of the temporary injunction issued by the Court in this matter.

ORDERED this 3rd day of September, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE